IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02435–MSK–KMT

A.H., a minor by and through his parent and next friend,
TONY HADJIH, and
TONY HADJIH, individually,

Plaintiffs,

v.

EVENFLO COMPANY, INC., a Delaware corporation,

Defendant.

---

**ORDER**

---

This matter is before the court on "Plaintiffs' First Motion to Compel Discovery with Memorandum in Support and Request for Hearing" [Doc. No. 42] ("Mot.") filed May 20, 2011. On June 17, 2011 "Defendant Evenflo Company Inc.'s Opposition to Plaintiffs' First Motion to Compel Discovery" [Doc. No. 49] ("Resp.") was filed and on July 1, 2011 "Plaintiffs' Reply in Support of Their First Motion to Compel Discovery"[Doc. No. 50] ("Reply") was entered. The court held a hearing on July 14, 2011. The court has considered the parties' filings, the various affidavits submitted and the exhibits presented during the hearing, as well as arguments of counsel. The matter is ripe for review and ruling.

***Statement of the Case***

The following account is taken from Plaintiffs' Amended Complaint [Doc. No. 11] ("Am.Compl.") and the parties' submissions with respect to this Order. On June 10, 2005, Razika Hadjih, mother of Plaintiff A.H., was driving a 1996 Jeep Grand Cherokee northbound on South Buckley Road in Centennial, Colorado with her children, M.H. and A.H. Plaintiff A.H. was occupying an Evenflo Discovery Infant Car Seat, model number 3162356 (referenced herein as a "Model 316") which was manufactured by Defendant on January 5, 2005. (Am. Compl. ¶¶ 7-8.) The Discovery line of child restraint systems ("CRS") consist of two pieces – a "seat" which is detachable for transport by hand and a "base" which remains affixed in an automobile. It is not disputed, at least for purposes of this motion, that the base was properly installed in the Jeep, in the right rear passenger position, using the Jeep's rear seat belts. It is also not disputed for purposes of this motion that the seat was snapped into the base in conformance with Evenflo's instructions and A.H. was properly restrained by the Discovery Model 316's harnesses within the seat.

Razika Hadjih attempted to make a left hand turn from South Buckley Road onto East Orchard Road, whereupon the Jeep was struck by an oncoming 2004 Dodge Dakota traveling at approximately 28 miles per hour. (*Id.* at ¶9; Resp., Ex. 4, Arapahoe County Sheriff's Report dated June 29, 2005 at 1.) The Dodge truck impacted the Jeep on the passenger side, causing both front and back Jeep doors to buckle inward. (Resp. at 5, pictures.) The car seat in which A.H. was seated was impacted by the intrusion of the door panel into the inside of the passenger compartment. (Resp., Ex. 6, Accident Report of Robert J. Caldwell.) During the collision, the

Model 316 Evenflo CRS suffered a "seat/base separation" wherein the seat portion of the car seat dislodged from the base which was strapped in by the Jeep's seat belts. A.H., who remained strapped in the seat portion as it dislodged from the affixed and restrained base, was injured. (Compl. at ¶ 13.) After the collision, it was noted that the "base" portion of the child seat was still tightly restrained by the Jeep's seat belts in its pre-crash position. Disputed by the parties is whether the retention device intended by Evenflo to keep the seat attached to the base failed due to the impact of the collision (absent any intrusion) or whether the failure was caused by the force of the buckled door directly hitting the car seat unit. (Am. Compl. at 13; Resp. at 6.)

Almost two years preceding this accident, the National Highway Traffic Safety Administration ("NHTSA"), by final rule published June 24, 2003, promulgated new requirements for child car restraints such as the Evenflo Discovery models, requiring that all rear-facing infant child restraints, 1) have a seat back length of at least 20 inches, 2) be dynamically tested using a 22-pound, 12-month-old test dummy instead of the 18-pound 9-month old test dummy previously used in testing, 3) be dynamically tested with a standard test bench reclined 8 degrees more than the previous bench, and 4) be installed by methods wherein the vehicle lap belt anchorage spacing increased from 8.75 inches to 15.75 inches.[1] (Resp., Ex. 7, Affidavit of Randolph L. Kiser, Director of Product Safety for Evenflo (hereinafter "Kiser Aff.".))

---

[1] Federal Motor Vehicle Safety Standard No. 213 ("FMVSS 213"). See 49 C.F.R. § 571.213 (2011).

In April 2005, in response to NHTSA's new regulations, Evenflo began manufacturing and distributing Models 390/391 car seats as the replacement of the Model 316 car seat.[2] Evidence presented at the hearing indicated that the development of the Models 390/391 CRSs was begun 18 months prior to the actual manufacturing of the 390/391 models. (Resp. at 7.) Defendant claims Models 390/391 were not produced until April 2005. (Resp. at 7.) The plaintiff presented evidence at the hearing indicating that the molded plastic base of a Model 391 CRS, however, was manufactured at least as early as January 2004.[3]

In February 2007, NHTSA began installing infant child restraint systems from various manufacturers, including the Discovery Models 390/391, on the non-impact side of different vehicles as part of their research and testing into side impact crashes when the striking vehicle was traveling at a rate of 19 miles per hour. (Kiser Aff. at ¶ 17.) Mr. Kiser stated,

> NHTSA first contacted Evenflo in October 2007 to request that the company work with the agency to better understand the results of certain side NCAP tests conducted in August and September of that year. Evenflo had previously conducted dynamic side impact tests of the Evenflo Discovery Model 390 and 391 and had at that time not observed any forcible detachments.

*Id.* at ¶ 18. The tests conducted by NHTSA resulted in detachments of the base and seat for the seats involved in the tests, Discovery Models 390/391. (*Id.* at ¶19.) Evenflo, in 2008 after being

---

[2] Evenflo claims manufacturing of the Model 316 car seat ended in July 2005. (Kiser Aff. at ¶ 7.)

[3] The molded plastic bases for Evenflo Discovery CRSs are stamped with a mold date which is part of the mold itself, rather than a removable sticker or other label. The manufacture date for this particular seat, once assembled, has a "label" which says the entire system was manufactured in May 2005.

contacted by NHTSA, instituted a “Voluntary Safety Recall” of Discovery CRSs manufactured between April 2005 and January 2008. (Resp. at 7-8.) Although Evenflo sometimes referred to the safety “campaign” as a recall, this was technically inaccurate. In actuality, Evenflo provided all owners of the designated car seats with supplemental fasteners which clipped the seat and base together more securely. (Resp. at 7.) Although the Discovery Model 316 CRS involved in this case was manufactured only three months before the seats involved in the recall, Model 316 car restraint systems were not part of the recall/retrofit and owners of these and other Discovery two-piece models manufactured prior to April 2005 were not provided with the simple supplemental fastener to clip seats and bases together.

***Issues***

Plaintiffs requested in discovery, among other things, information pertaining to Discovery Models 390 and 391. This information is characterized by the Plaintiff as: “(1) design documents – including blueprints, change orders, and reports; (2) testing data and related documents that led to the decision to recall Discovery Models 390 and 391; (3) internal documents discussing the reason why several Discovery Models (including the Model 316 at issue in this case) were excluded from the February 1, 2008, recall; and (4) information concerning other similar incidents where children were injured or killed while in Discovery Models 390 or 391. Evenflo refuses to provide such information on the basis that Model 316 is the model involved in this accident and Models 390/391 were the only models involved in the

retrofit.[4] Evenflo also argues that the recall/retrofit occurred in 2008, three years after the accident involved in this case, and is therefore not relevant. Further, Evenflo argues that Models 390/391 are not substantially similar to Model 316 given that the design was modified to comply with FMVSS 213. Finally, Evenflo argues that the tests which led to the retrofit of Models 390/391 are different from the Hadjih accident because the velocity of the impact was greater in the Hadjih crash and the seat was positioned on the side of the direct impact. Therefore, Evenflo argues, the information sought by Plaintiffs does not appear reasonably calculated to lead to the discovery of admissible evidence.

***Analysis***

***A. Discoverability***

Although there are specific limits on the admissibility of similar accidents, products or lawsuits in a products liability case, such evidence need not be admissible to be relevant and, therefore, discoverable. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Fed. R. Civ. P. 26(b) provides specifically,

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Id*. (emphasis added). Relevancy in the discovery context is broader than admissibility of evidence at trial. *See Folsom v. Heartland Bank*, No. Civ.A.98-2308-GTV, 1999 WL 322691, at

---

[4] Discovery Models534/552 were also involved in the retrofit; however these models are simply Models 390/391 sold in a set with a stroller. (Resp. at 7.)

*1(D. Kan. May 14, 1999); *Caldwell v. Life Ins. Co. of N. Am.*, 165 F.R.D. 633, 638 (D. Kan. 1996); *United States v. Ausbrook*, No. 92-40064-01, 1993 WL 270506, at *3 (D. Kan. June 4, 1993) (" 'relevance' in civil discovery is a much more encompassing standard than 'relevance' in the admissibility of evidence . . . . In fact, inadmissibility at trial is not a proper objection to discovery in a civil case." Whether the court will ultimately disallow the use of such information at trial due to its prejudicial effect does not affect its discoverability. However, this legal tenant should not be misapplied to allow a fishing expedition in discovery. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *Orleman v. Jumpking, Inc*., No. CIV A. 99-2522-CM, 2000 WL 1114849, at *2 (D. Kan. July 11, 2000).

Further, the Rule provides, "All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Therefore, in order for information to be subject to discovery at all, it must be relevant or reasonably calculated to lead to relevant, admissible evidence ,and, if it meets that initial criteria, it will also be subject to the restraints and limitations of subsection (b)(2)(C) disallowing overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests. Murphy v. Deloitte & Touche Group Ins. Plan , 619 F.3d 1151, 1163 (10th Cir. 2010) (internal citations omitted).

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead

to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The Federal Rules of Civil Procedure strongly favor full discovery whenever possible.

***B. Similarity***

Generally, courts considering products liability cases hold that in order to be entitled to discovery concerning other incidents, plaintiff need not lay the same foundation of substantial similarity as would be necessary to support admission into evidence. *Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 164 -165 (W. D. Mich. 1991). *See also Uitts v. General Motors Corp.*, 58 F.R.D. 450, 452-53 (E. D. Pa. 1972). For discovery purposes, the court need only find that the circumstances surrounding the other accidents or products are similar enough that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences. *Id.*; *see Peterson v. Auto Wash Mfg. & Supp. Co.*, 676 F.2d 949, 953 (8th Cir. 1982); *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692-95 (D. Minn. 1989).

If the discovery requested by Plaintiffs is allowed they would, however, bear the greater burden if they sought to have the information about different products and/or accidents admitted at trial. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009). In *Four Corners Helicopters, Inc. v. Turbomeca*, 979 F.2d 1434, 1440 (10th Cir. 1992), the Tenth Circuit instructed that before introducing evidence of other defective products, the proponent of the evidence must show that the product or incident was "substantially similar to the accident [or product] involved in the present case." *Id.* "Substantial similarity depends upon the underlying theory of the case." *Id.* When the evidence is offered to demonstrate that a highly dangerous

condition existed, a high degree of substantial similarity would be required. *Id.* "The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect" or when the information will be used for purposes such as impeachment. *Id.* (citing *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir.1988)). *See Cooper Tire & Rubber* at 1191 (Because the plaintiffs' theory of the case included the argument that Cooper was on notice of a tire tread separation problem, the district court was not clearly in error in concluding that information on tires manufactured to specifications of another tire not involved in the case could tend to lead to discoverable evidence).

Defendants argue that the Model 316 and Models 390/391 are sufficiently dissimilar to render discovery about the testing and ultimate recall/retrofit in 2007 and 2008 irrelevant. Primarily, Defendants argue that compliance with FMVSS 213, which lengthened the seat portion of the car seat and provided for testing with larger dummies,[5] required Models 390/391 to undergo significant design changes which largely contributed to the results of the NHTSA testing and the recall/retrofit of those Discovery models. The parties are not in disagreement that the Model 316 was manufactured on the basis of a different federal regulation. Further, Defendants argue that the testing by NHTSA did not involve the significant intrusion by the car door into the interior of the vehicle and, since they argue that this impact between door panel and

---

[5] All parties agree, however, that A.H. fit the profile for the smaller test dummies which had previously been used for testing, not the larger test dummy required by FMVSS 213. (Resp. at 14.)

car seat was the cause of the separation of the Hadjih base and seat, the testing is irrelevant to the Model 316 and the Hadjih accident. Further they argue that since the speed of the machine performing the side impact in the NHTSA tests was significantly lower than the speed of the Dodge truck which impacted the Hadjih vehicle, the testing is also dissimilar and therefore irrelevant.[6]

Plaintiffs counter that the Models 316, 390 and 391 are very close to being identical and that the design differences were very minor. At the hearing, Plaintiffs presented unrefuted evidence that the bases of the Model 390/391 and the seats of other Models, including Model 316, are designed to work together and can be used together; in other words, a functional car seat could have a Model 390/391 base and a Model 316 seat, or vice versa, and everything would function properly.[7]

Clearly, there are some design differences between the Model 316 and the Models 390/391. Whether those design difference were the cause of the separation noted by the NHTSA in the 2007 test, though, is one of the essential matters of contention between the parties. Defendants argue the design differences made all the difference in the problematic separations noted by the NHTSA and were addressed by Evenflo in the 2008 retrofit. Plaintiffs argue that the separation of seat and base in side impact automobile accidents is a long-standing and well-

[6] The ramming force used by the NHTSA to test the Discovery Model 390 performance was 19 miles per hour. Kiser Aff. at ¶ 17.

[7] Plaintiffs state it thus: “Every Discovery seat model will properly interlock with every Discovery base model.” (Mot. at 13.) Defendant has not refuted this allegation.

known defect in the Discovery CRS, but it wasn't until NHTSA conducted its tests that Evenflo would acknowledge the problem. Evenflo claims, "Evenflo had previously conducted dynamic side impact tests of the Evenflo Discovery Model 390 and 391 and had at that time not observed any forcible detachments." Kiser Aff. at ¶ 18. Further Evenflo claims, "NHTSA's independent tests and Evenflo's own testing did not warrant [recalling/retrofitting] with respect to any model other than Model 390/391." (Resp. at 12.) This testing and related data is critical, apparently, to Evenflo's defense of this case.

A party seeking discovery should not be limited by its opponent's theory of the case in determining what is discoverable. *Cooper Tire & Rubber Co.*, 568 F.3d at 1192. What is "relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26, Advisory Committee Note (2000). Further, the substantial similarity rule does not require identical products; nor does it require the court to compare the products in their entireties. *Smith v v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1248 (10th Cir. 2000). The rule only requires substantial similarity among those variables which are relevant to the plaintiff's theory of defect. *See Four Corners Helicopters, Inc.*, 979 F.2d at 1440 (The precise degree of similarity required to ensure the relevance of another accident or product depends on the theory of defect underlying the case).

Further, the Tenth Circuit has specifically acknowledged that evidence of similar post-accident occurrences or injuries may be admissible at trial to refute testimony given by a defense witness that a given product was designed, for instance, without safety hazards. *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1409 (10th Cir. 1988). So, too, have Colorado

courts endorsed evidence of post-accident incidents or products submitted for the legitimate purpose of rebutting the testimony of defendant's expert. *Koehn v. R.D. Werner Co., Inc.,* 809 P.2d 1045, 1048-1049 (Colo. App. 1990). Again, however, the proponent of such evidence must demonstrate that the other accident occurred under circumstances and conditions the same or substantially similar to the one involved in the present case. *See Johnson v. Colt Industries Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986).

This court finds that the similarities between the Model 316 and the Models 390/391 are sufficient to justify discovery concerning the design, manufacture, testing and ultimate recall/retrofit of the Discovery Models 390/391. Both Plaintiffs and Defendants should have enough information and knowledge to be able to determine whether Defendant's theory that it was the peculiar design modifications in the Models 390/391 as a result of attempts to comply with FMVSS 213 that caused or exacerbated the seat/base separation in the Discovery child restrain system noted by the NHTSA and which resulted in the recall/retrofit of some of the Models in the Discovery line. Also, should Defendant's experts or in-house technical personnel testify that the design modifications encompassed in the Models 390/391 were the cause of the need for the recall/retrofit, and thereby attempt to explain or justify why the previous Discovery models would not be made safer by receiving the same retrofit as the Models 390/391, the information obtained in discovery could be used for impeachment by the Plaintiffs. *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001) ("[E]vidence of other accidents in a products liability suit is relevant to show notice, demonstrate the existence of a defect, or to refute the testimony of a defense witness.") Likewise, the accident involving the Hadjih family

was reasonably similar to the later NHTSA testing, as will be discussed more particularly *infra*. Any differences in the circumstances between the two occurrences goes to the weight to be given such evidence. *Ponder v. Warren Tool Co.*, 834 F.2d 1553, 1560 (10th Cir. 1987); *Simon v. Coppola*, 876 P.2d 10, 14 -15 (Colo. App. 1993).

***C. Related Case***

Evenflo greatly emphasizes two Northern District of Florida orders issued by Magistrate Judge Elizabeth M. Timothy which disallowed discovery identical to that now sought by the Plaintiffs in this case. *See Hendrix v. Evenflo*, Case No. 3:07cv133/MCR/EMT. However, upon close review, the accident and other factual circumstances in the *Hendrix* case were significantly dissimilar to the facts underpinning this case.

In *Hendrix*, Plaintiffs originally filed their case on about April 12, 2006, "as a result of injuries sustained by Plaintiff Gatlin Perryman, an infant, when the Evenflo Discovery child safety seat he was riding in allegedly malfunctioned during an automobile collision on April 17, 2002." (Resp., Ex. 1, Order of Magistrate Judge Timothy dated March 20, 2008 (hereinafter "Hendrix I") at 1.) The accident occurred when Plaintiff Hendrix rear-ended the vehicle in front of her, while traveling at approximately 7 to 11 miles per hour and the seat holding the infant dislodged from the base. (*Id.* at 4, n. 3.) The car restraint system involved in the Hendrix accident was an Evenflo Discovery Model 212.

In the first Order attached by Defendants in their objection to release of the post accident discovery concerning the Model 390/391, Magistrate Judge Timothy noted that originally when Plaintiffs requested "post-collision" documents associated with Model 390/391, she had ruled,

> An issue in this case concerns the seat/base separation of Discovery in an automobile collision. The court concludes that information concerning such a separation in any accident, not just frontal collisions, is likely to lead to the discovery of relevant or admissible evidence. In short, if information exists that the Discovery is separating when the car is impacted, whether it be from the front, rear, or side, such information is discoverable. . . . Therefore, Defendant shall be ordered to produce the information requested by Plaintiffs concerning non-frontal collisions involving Discovery to the extent that it does not impose an undue burden or expense on Defendant.

*Hendrix I* at 4. By way of explaining the reversal the court took on the issue in *Hendrix I*, Magistrate Judge Timothy explained that she was unaware, at the time she entered the first Discovery order, that the Hendrix accident involved a "false latch" condition on the car seat.[8] *Id.* Largely because of that difference, Judge Timothy later ruled in *Hendrix I* that post accident discovery about the Model 390/391 was not sufficiently similar to be relevant and therefore overturned her initial ruling that the discovery would be allowed.

In this case, however, there is no allegation of "false latch." As Magistrate Judge Timothy had first thought was the case in *Hendrix I*, the car seat in the Hadjih accident was fully and appropriately latched seat to base, exactly the same as the tests that were conducted by the NHTSA which led to the recall/retrofit of Models 390/391. Magistrate Judge Timothy also noted that the recall/retrofit of the Models 390/391occurred 7 years after the CRS involved in the Hendrix accident was manufactured. (*Hendrix I* at 7.) In this case the car seat involved in the accident was manufactured only two years prior to the NHTSA testing, the Model 316 was the

---

[8] The parties do not dispute that, "A false latch occurs when a parent attempts to place the infant carrier in the base and hears the "click" that indicates the carrier is properly secured in the base. In actuality, the seat is not secured to the base, and in an accident, the seat will freely detach from the base." (Mot. at 18.)

direct predecessor to Models 390/391, and the Model 316 actually involved in the Hadjih crash was manufactured three months prior to Evenflo's initial cut-off date for car seats subject to the recall/retrofit. In fact, the manufacturing, or at least the distribution, of Model 316 and Model 391 appears to have overlapped at a point in 2005.[9]

Further, Magistrate Judge Timothy noted that the Hendrix accident was a front-end, low speed crash, unlike the NHTSA testing protocol. (*Id.*) In this case, the Hadjih accident was a side impact, higher speed crash very similar to the NHTSA testing on the Models 390/391. Magistrate Judge Timothy noted, "Thus, because Defendant's recall is further based on the possibility of a forcible detachment of a properly attached carrier and base, a phenomenon both opposite and different from "false latch," the issues related to the recall are not discoverable because those issues do not, in any way, relate to "false latch" testing." (*Id.* at 8.) Ultimately, based on those factors, Magistrate Judge Timothy ultimately found, "Here, as the recall does not involve substantially similar accidents, car seats, or circumstances, the discovery sought by Plaintiffs does not appear reasonably calculated to lead to the discovery of admissible evidence. Moreover, the production of recall-related discovery would impose an undue burden or expense on Defendant." (*Id.*)

The case at bar is postured – in each important way – differently from the plaintiff's case in *Hendrix* I. Therefore, while instructive, this court does not find the rulings in *Hendrix I* to be applicable to the discovery issue now before this court under different circumstances.

---

[9]Manufacture of the Model 391 began two years before the manufacture of Model 390. (Kiser Aff. at ¶ 7.)

For the same reasons, the court is not persuaded otherwise by Magistrate Judge Timothy's reconsideration of *Hendrix I* when the matter was again before her to consider the impact on her former discovery ruling in light of testimony from Defendant's expert. (Resp., Ex. 2, Order of Magistrate Judge Elizabeth M. Timothy dated May 9, 2008 ("*Hendrix II*") and reported at 2008 WL 2025840.)[10] The consideration of the expert's report in *Hendrix II* revealed even more dissimilarities between the Hendrix accident and NHTSA's testing leading to the 2008 recall/retrofit on Models 390/391. The expert report revealed that the Hendrix car seat was improperly installed in the right front seat where it was hit by an air bag. (Hendrix II at *2.) Further, the expert concluded that in the Hendrix accident the base and the seat of the Evenflo Discovery Model 212 did not actually separate, but rather that the car seat fractured from being hit by the air bag. (*Id.*) Again, Magistrate Judge Timothy emphasized that Plaintiffs simply could not establish that the circumstances of their accident were similar to those involved in Defendant's and the NHTSA's 2007 testing. This court agrees with Magistrate Judge Timothy that the *Hendrix* expert report actually strengthened her order precluding the post-accident discovery as it pointed out even more dissimilarities between the Hendrix accident and the conditions that underlay the recall/retrofit of the Models 390/391. *Id.* However, for the same reasons, the dissimilar facts in *Hendrix I* and *Hendrix II* underscore the similarities between the Hadjih accident and car seat and the circumstances leading up to the recall/retrofit of the Models 390/391. Those similarities inevitably lead to a different conclusion.

---

[10] Citations to *Hendrix II* will be made utilizing the *page in the Westlaw citation.

Therefore, it is **ORDERED**

"Plaintiffs' First Motion to Compel Discovery with Memorandum in Support and Request for Hearing" [Doc. No. 42] is **GRANTED**.

Defendant is **ORDERED, on or before September 16, 2011,** to provide documents, not otherwise privileged, responsive to Plaintiffs' First Request for Production of Documents (Mot., Ex. A) on topics concerning: design documents for Discovery Models 390 and 391, including blueprints, change orders, and reports; testing data and related documents that led to the decision to recall/retrofit Discovery Models 390 and 391; internal documents discussing the reason why several Discovery CRS Models (including the Model 316 at issue in this case) were excluded from the February 1, 2008, recall/retrofit; and other similar incidents where children were injured or killed while in Discovery Models 390 or 391.

Dated this 23d day of August, 2011.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge