IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02435–RBJ–KMT

A.H., a minor by and through his parent and next friend,
TONY HADJIH, and
TONY HADJIH, individually,

    Plaintiffs,

v.

EVENFLO COMPANY, INC., a Delaware corporation,

    Defendant.

---

## ORDER

---

This matter is before the court on "Plaintiffs' Motion Requesting the Court to Conduct *In Camera* Review of Documents that Defendant Evenflo Company, Inc., is Withholding Pursuant to Claimed Privileges" [Doc. No. 87].  Defendant filed a response on March 23, 2012 [Doc. No. 95] ("Resp.").  A hearing was held on May 9, 2012 and the motion was granted in part to allow consideration by the court *in camera* of documents listed on Evenflo's Privilege Log [Doc. No.

95-1].[1]  Ruling on the propriety of withholding the documents was held in abeyance subject to such *in camera* review.  [Doc. No. 110, Minutes of May 9, 2012 hearing.][2]

Evenflo has submitted the updated Privilege Log and the subject documents[3] to the court and after *in camera* review the court finds as follows:

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *In re Qwest, Communications Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  The attorney-client privilege protects from discovery communications made in confidence between the client and the attorney.  *EEOC v. Outback Steakhouse of Florida*, 251 F.R.D. 603, 610 (D. Colo. 2008).  "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  *Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002) (quoting *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994)).  In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client.  *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983).

The purpose of the attorney-client privilege "is to encourage full and frank

---

[1] The Privilege Log submitted with the documents to the court was updated and it is the court's understanding that the actual Privilege Log as submitted was provided to Plaintiffs.

[2] A transcript of that hearing is filed at Doc. No. 113.

[3] The provided documents will be held by the Clerk as "conventionally filed papers" and will be maintained subject to restriction - Level 3.

communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability and the lack of waiver of any privilege. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). *See also United States v. Phelan*, 3 Fed. App'x 716, 718 (10th Cir. 2001).

In federal court, the law controlling determination of privilege issues depends upon the dictates of Rule 501 of the Federal Rules of Evidence. Rule 501 states

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Id.* Jurisdiction in this case is premised upon diversity and therefore state law controls the determination of attorney-client privilege issues. In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009).

The common-law attorney-client privilege has been codified in Colorado as section 13-90-107(1)(b) of the Colorado Revised Statutes, which states "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or

3

his advice given thereon in the course of professional employment." *Id.; See Mountain States Tel. & Tel. Co. v. DiFede,* 780 P.2d 533, 541 (Colo. 1989). The privilege only applies to communications under "circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001).

The great majority of the documents submitted by Evenflo for *in camera* review are clearly and definitively protected by the attorney-client privilege on their face. As to several of the documents, especially the first 11/1/07 email from R. Kiser to T. Spano and others, the 11/1/07 email from R. Kiser to T. Batalaris and others, and the 11/16/07 email from C Roos to T. Spano and others, later protected correspondence makes it clear that documents and information were being transmitted to the attorneys, both in- house and outside retained, for the purposes of obtaining legal advice on a developing issue. "[T]he [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the *giving of information* to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 389 (emphasis added).

As noted at the hearing, some of the documents included transmission of information to persons who were employed by the Zeno Group.

Generally, disclosing attorney-client communications to a third party results in a waiver of the attorney-client privilege. *See In re: M & L Business Machine Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993) ("the attorney-client privilege is lost if the substance of the confidential communication is disclosed to a third party, even inadvertently."); *Sedillos v. Board of Education of School Dist. No. 1*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004) ("the

4

attorney-client privilege can be waived by [a]ny voluntary disclosure by the client of an otherwise privileged confidential communication").

The attorney-client privilege can extend to communications between representatives of the client or between the client and a representative of the client, if the communication was made in confidence for the primary purpose of obtaining legal advice. *Austin v. Denver ex rel. Board of Water Com'rs,* 05-cv-01313-PSF-CBS, 2006 WL 1409543, at *4 -5 (D. Colo. May 19, 2006); *Williams v. Sprint/United Management Co.,* No. 03-2200-JWL_DJW, 2006 WL 266599, at *3 (D. Kan. February 1, 2006). The "*sine qua non* for invocation of the privilege is that the communications in question were intended to be confidential." *Gottlieb v. Wiles*, 143 F.R.D. 241, 249 (D. Colo. 1992) (citing *United States v. Rockwell Intern.*, 897 F.2d 1255, 1265 (3d Cir. 1990)); *Bethel v. U.S. ex rel Veterans Admin. Medical Center*, 55-cv-01336-PSF-KLM, 2008 WL 45382, at *7 -8 (D. Colo. Jan. 2, 2008). The presence of a third party in an email transmission, for instance, will not destroy the attorney-client privilege if the third party is the attorney's or client's agent or possesses commonality of interest with the client. *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (finding that attorney-client communications in the presence of a third party not the agent of either are generally not protected by privilege); *Bethel,* 2008 WL 45382, at *7 -8.

Courts applying the rationale of the *Upjohn* and *Bieter* cases to third party communications with an attorney have held that confidential communications between a party's counsel and a non-testifying expert or consultant, hired in anticipation of litigation, are protected by the attorney-client privilege. *See Western Resources v. Union Pacific Railroad Co.*,

5

00-20430CM, 2002 WL 181494, at *7 (D. Kan. Jan. 31, 2002); *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.*, S-05-0583 LKK GGH, 2006 WL 2255538 (E.D. Cal. Aug. 7, 2006); *In re Grand Jury Subpoena Dated March 9, 2001,* 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001). The penultimate question is whether the third-party communication was made in confidence for the purpose of obtaining legal advice from the lawyer. *Compare Carter v. Cornell University*, 173 F.R.D. 92, 94-95 (S.D.N.Y.1997) (holding that the attorney-client privilege extended to interviews with university employees conducted at the request of counsel and for the exclusive use of counsel in providing legal representation) *with United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (outside consultants hired by defendants to conduct environmental studies were not encompassed by the attorney-client privilege where their function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants).

The District of Colorado and other courts have adopted the "functional equivalent" test enunciated in *Horton* to help determine whether to extend the attorney-client privilege to third parties acting at the behest of a client or their attorney. 204 F.R.D. at 672 (requiring party asserting privilege to make a "detailed factual showing" that third party is the "functional equivalent" of an employee). *See also Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 492 (2000) (plaintiff failed to meet his burden of proving by a detailed factual showing that third party was the functional equivalent of an employee). In an attempt at rational definition, the District Court for the Southern District of New York distilled the "functional equivalent" test

down to three basic elements with respect to outside consultants: (1) "whether the consultant had primary responsibility for a key corporate job," (2) "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation," and (3) "whether the consultant is likely to possess information possessed by no one else at the company." *See Export-Import Bank v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp.2d 958, 962 (N.D. Ill. 2009) (adopting the functional equivalent test).

As with corporate consultants, application of the privilege to communications with an independent contractor is determined on a case-by-case basis. *Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.* 2:05-cv-01318-BES-GWF, 2006 WL 3149362, at *13 (D. Nev. Nov. 1, 2006). Courts have reached varying results in applying this test. *See Bieter*, 16 F.3d at 937-38 (consultant who was contracted to provide advice and guidance regarding commercial and retail development for the company was a functional equivalent of an employee); *Horton*, 204 F.R.D. at 672 (property management company employee was not the functional equivalent of an employee of the property owner); *Export-Import Bank*, 232 F.R.D. at 113 (financial consultant was not the functional equivalent of an employee); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001) (public relations consultant who consulted with the company's counsel regarding a pending investigation was the functional equivalent of an employee pursuant to federal common law); *Alliance Const. Solutions, Inc. v. Dept. of Corr.*, 54 P.3d 861, 568-569 (Colo. 2002) (citing *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 219); *Royal Surplus Lines Insurance Co. v. Sofamor Danek Group, Inc.,* 190 F.R.D. 463, 472-473 (W.

D. Tenn. 1999) (insurance broker who consulted with the insured and its counsel regarding an insurance policy dispute was a corporate representative under Tennessee privilege law); *Western Resources*, 2002 WL 181494, at *7 (expert consultant retained in anticipation of litigation was corporate representative within scope of Kansas attorney-client privilege).

As noted, some of the alleged privileged communications withheld from discovery by Evenflo included communications to employees of the Zeno Group. Evenflo has represented that Zeno Group is "a public relations firm retained by Evenflo to work with its counsel and provide advice regarding the recall/retrofit campaign announced February 1, 2008." (Resp. [Doc. No. 95, filed March 23, 2012] at 3.) Evenflo further stated

> Zeno Group was retained by Evenflo to consult on its public relations matters and worked with Evenflo counsel and employees regarding public relations strategy for the recall of Discovery Models 390 and 391. *See* Affidavit of Cheryl Pellegrino, attached hereto as Ex. B. Evenflo did not have a public relations department, so Zeno Group served as the functional equivalent. In collaboration with Evenflo's counsel, Zeno Group prepared a communications plan regarding the recall. *Id*. This included drafting correspondence to NHTSA, as well as a press release and other communication to the public. *Id.* Zeno Group incorporated input from Evenflo's officers, employees and counsel in the proposed communications. *Id*.

*(Id*. at 4.)

As noted *infra*, the Colorado Supreme Court has favorably cited a decision by the Southern District of New York holding that an outside public relations firm was the "functional equivalent" of a company's in-house public relations department and therefore communications between it and the client or client's counsel were protected by the attorney-client privilege. *Alliance Const. Solutions, Inc*, 54 P.3d at 568-569. In *Alliance*, the Colorado Supreme Court

adopted a test to determine whether communications between a governmental entity's independent contractor and the entity's counsel are protected by the attorney-client privilege: (1) the information-giver must be an employee, agent, or independent contractor with a significant relationship not only to the governmental entity but also to the transaction that is the subject of the governmental entity's need for legal services; (2) the communication was made for the purpose of seeking or providing legal assistance; (3) the subject matter of the communication was within the scope of the duties provided to the entity by its employee, agent or independent contractor; and (4) the communication was treated as confidential and only disseminated to those persons with a specific need to know its contents. *Id.* at 862-863. *See also Bonanno v. The Quizno's Franchise Co., LLC*, No. 06-cv-02358-WYD-KLM, 2008 WL 1801173, *4 (D. Colo. Apr. 18, 2008).

Before application of the attorney-client privilege will be extended to non-employees, however, the party asserting the privilege must make a detailed factual showing that the non-employee is the functional equivalent of an employee and that the information sought from the non-employee would be subject to the attorney-client privilege if he were an employee of the party. *Horton* at 672. Defendant has met this burden as outlined above.

Based on the facts of this case, the Court finds that there is no principled reason to deny attorney-client protection to communications involving employees of Zeno Group with Evenflo's legal counsel that *in camera* review reveals were primarily or predominately of a legal character and therefore would be considered privileged attorney-client communications if Mr. Armstrong, Mr. Waterman, or Ms. Pellegrino were technically employees of Evenflo.

Therefore, this court finds that communications involving the Zeno Group employees are entitled to the same attorney-client protection had the Zeno Group employees actually been Evenflo employees and the privilege has not been waived by their inclusion in several of the protected communications.

Two specific documents, however, did occasion the court to disagree with Evenflo regarding the protected character of the communication.  As to the December 5, 2007 email from Rob Matteucci to Khayes@westonpresidio.com, there is no attorney included in the transmission.  Kevin Hayes is identified as "Member of Evenflo Board of Directors."  (Priv. Log.)  The email is from the CEO of Evenflo to a member of its Board, advising the Board member that certain communications, which were attached, were going to be made to a government entity.  The document attached was prepared for Lindsay Harris's signature (Vice President of Evenflo) to be submitted to a government entity.  The body of the message did not contain any request for approval or advice from the Board member or anyone else.  While an attorney may have been involved at some point with the drafting of the document attached to the email, this communication was not "confidential matters communicated by or to the client <u>in the course of gaining counsel, advice, or direction</u> with respect to the client's rights or obligations."  *People v. Tucker*, 232 P.3d at 198 (emphasis added).

As to the January 3, 2008 transmission from Scott Almquist to Tom Spano, clearly this originates as a communication between the vice president and general manager of North American Brands (Evenflo) and its in-house counsel.  However, beyond the original message in the email, the communication merely forwards a series of communications which are not subject

to attorney-client privilege. The attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn*, 449 U.S. at 395-96. The Supreme Court, quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F. Supp. 830 (D. C. Pa. 1962) stated

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Id. See also Diversified Industries*, 572 F.2d. 596, 611 (8th Cir. 1978). Stated simply, a party, including both entities and individuals, cannot conceal facts otherwise subject to discovery, merely by revealing them to its lawyer. *See Upjohn Co.*, 449 U.S. at 395-396. Therefore, the court finds that with the exception of the two sentence communication from Almquist to Spano in the first email of the series, the email string is not subject to withholding from discovery on the basis of privilege.

WHEREFORE, it is ORDERED

"Plaintiffs' Motion Requesting the Court to Conduct in Camera Review of Documents that Defendant Evenflo Company, Inc., is Withholding Pursuant to Claimed Privileges" [Doc. No. 87] IS GRANTED IN PART and DENIED IN PART as follows:

    1.    The December 5, 2007 email from Rob Matteucci to Khayes@westonpresidio.com with attachments shall be

       removed from the privilege log and produced in full to the plaintiffs on or before May 30, 2012.

2. The January 3, 2008 email from Scott Almquist to Tom Spano shall be redacted to remove the entire contents of the first communication in the email string and then produced in redacted form to the plaintiffs on or before May 30, 2012. Since the email is redacted on attorney-client grounds, the document should remain listed on Evenflo's Privilege Log.

Dated this 31st day of May, 2012.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge