IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-02435-RBJ-KMT

A.H., a minor, by and through his parents and next of friend,
TONY HADJIH and
TONY HADJIH, individually,

      Plaintiffs,

v.

EVENFLO COMPANY, INC., a Delaware Corporation,

      Defendant.

---

## ORDER

---

Several motions in limine have recently been filed, most of which are not yet fully briefed. At the request of the parties, the Court first addresses "Defendant Evenflo Company, Inc.'s Motion in Limine Regarding Discovery Models 390 and 391" [docket #134]. Evenflo asks the Court to exclude evidence including testing regarding certain models of Evenflo car seats not involved in the accident from which this case arises.[1]

**Facts**

Defendant Evenflo Company, Inc ("Evenflo") is a manufacturer of car seats. Plaintiffs are A.H., a minor child who was injured in a car accident while restrained in an Evenflo car seat, and his father Tony Hadjih. On June 10, 2005 A.H., approximately four months old, was strapped into a Discovery Model 316 car seat ("316") in a 1996 Jeep being driven by his mother. The 316 is a two piece model consisting of a carrier and base. The base is strapped into the car

---

[1] The parties have requested oral argument. Normally I would grant such a request as a matter of course. However, counsel for both parties essentially argued their positions during the recent trial preparation conference. For that reason, and because the trial is imminent, the Court elects to decide this motion without further argument.

using the seatbelt, and the carrier then attaches to the base. There is no dispute that A.H. was properly strapped into the car seat, the base was properly attached to the car, and the carrier was properly attached to the base. While making a left turn, the Jeep was struck on its passenger side, where A.H. was restrained, by a Dodge Dakota pick-up truck. The carrier disconnected from the base, and A.H. was found in the rear cargo compartment of the Jeep, still restrained in the carrier. A.H. suffered severe injuries as a result of the car accident.

In 2005 the National Highway Traffic Safety Administration ("NHTSA") made changes to the Federal Motor Vehicle Safety Standards that are applicable to car seats. The changes required that car seats have a seat back that is twenty inches long and be tested using a twenty-two pound dummy. The 316 was made under regulations that required an eighteen inch seat back and testing with a twenty pound dummy. To accommodate these changes the 316 was replaced by a Model 390/391 ("390/391"). Both the 316 and 390/391 are part of the Discovery line of Evenflo car seats.

The parties dispute how different the new 390/391 was in comparison to the 316. The carrier was lengthened by two inches. Evenflo explains that the base of the 390/391 had to be redesigned to add additional structural ribbing, and the wall in the middle of the base was thickened and reinforced. Plaintiffs argue that the design was hardly changed at all, and in fact, for a time the mold for the 316 base was being used to make 390/391 bases.

In 2007 NHTSA began testing child restraint systems from various manufacturers to research the effect of side impacts. During that testing, NHTSA discovered that in a side impact crash, the 390/391 carriers detached from their bases. NHTSA alerted Evenflo to its findings, and in response Evenflo launched a voluntary safety campaign (at times erroneously referred to

as a recall) that provided customers with a supplemental dual hook fastener strap to be added to the existing 390/391 car seats. The safety campaign did not include 316 car seats.

Evenflo now seeks to limit the use of the 390/391 detachments and testing during trial. Evenflo argues that the seats are not substantially similar and accordingly, this information is not relevant. Plaintiffs disagree and believe that this information is highly relevant.

Evenflo also asked that evidence pertaining to the voluntary safety campaign be excluded. The parties have agreed that plaintiffs will not refer to the voluntary safety campaign without prior Court approval, so that portion of the motion is no longer at issue.

**Conclusions**

Admissibility of Evidence Regarding the Model 390/391 Seats Generally

The threshold question regarding admissibility of evidence is relevance. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246-47 (10th Cir. 2000). Evidence is relevant if it makes a material fact more or less likely. *See C.A. Assocs. v. Dow Chemical Co.*, 918 F.2d 1485, 1489-90 (10th Cir. 1990). In products liability actions, substantially similar acts or occurrences are often permitted to "demonstrate the existence of a defect, to prove notice, or to refute testimony given by defense witnesses." *Id.* at 1489. The parties to the present case do not dispute that the relevance of evidence concerning the Model 390 and 391 car seats should be evaluated under the "substantial similarity" rule.

The fact that the evidence involves different models with somewhat different features is not itself dispositive. "The substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiffs' theory of defect." *Smith*, 214 F.3d at 1248. A higher degree of similarity is required when the plaintiff uses the other products to

show causation, while a lower degree of similarity is required when the plaintiff uses the other products to show that the defendant had notice of the alleged defects. *Id.* at 1246-47. Here, plaintiffs wish to offer evidence concerning the 390/391 car seats to show a defect in the latching mechanism that connects the carrier to the base. Therefore, because the 390/391 car seats are being offered as evidence of a defect, the plaintiffs must show a high degree of similarity.

      Here, plaintiffs' theory of defect is that the plastic latching mechanism did not work properly, and that this defect allowed the carrier to disconnect from the base, causing A.H.'s injuries. Therefore, the substantial similarity analysis focuses on the similarity between the latching mechanisms on the 316 and the 390/391. It is largely undisputed that both models had nearly identical latching mechanisms. Both have a carrier release that was made with two plastic "engagement teeth" that engage .09 inch thick notches in a plastic base at the head of the carrier. On the other end of the seat, where the infant's feet would be, there is a plastic tip that slides under a plastic hook that is attached to the base. Both latches were made using the same utility patent. Because of the similarity of the latching mechanisms, a 316 carrier could attach to a 390/391 base or a 390/391 carrier could attach to a 316 base.

      The only difference in the latching mechanisms that either party has identified is the use of a snap-in design instead of a fetter pin.[2] In the 316 car seats, the latching mechanism was attached to the carrier by a fetter pin. In the 390/391 the latching mechanism was attached to the car seat using a snap-in design. This change eliminated a step in the assembly process. In their theory of defect plaintiffs do not argue that the latching mechanism failed because of the way it was attached to the carrier. Accordingly, this change is not material to the plaintiffs' theory and does not render the 316 and 390/391 too different to be relevant.

---

[2] There are some references in the quoted language in the briefs as well as in Mr. Whitman's affidavit that there were two changes to the latching mechanism. However, neither party has chosen to identify or discuss the second change. Accordingly, only the fetter-pin will be considered.

Defendant argues that 390/391 car seats had a stiffer base than the 316 car seats, and that it was this stiffer base that led the carrier to detach from the base on the 390/391 car seats. On the 390/391 car seats, the bases were reinforced to make them stiffer, but the carriers were not. Defendant explains that it was this difference in relative stiffness between base and carrier that allowed the carrier to detach from the base. Because the 316 car seats did not have a stiffer base, defendant argues that the 316 carriers did not detach from their bases. In short, the changes required by the government ostensibly to make the car seat safer in fact rendered it less safe in the context of a side impact.

Evenflo's theory and evidence will be evaluated by the jury. However, that evidence does not negate the substantial similarity of the latching mechanisms. As indicated, substantial similarity turns largely on the plaintiffs' theory of the defect. *Smith,* 214 F.3d at 1248. Plaintiffs' theory is that the plastic latching mechanism did not adequately anchor the carrier to the base. Despite the stiffer base, the latching mechanisms are still substantially similar. Based upon what has been presented, I am satisfied that there is a sufficiently high degree of similarity to permit the evidence to be considered. I conclude that the differences between or among the models emphasized by Evenflo go to the weight but not the admissibility of plaintiffs' evidence. It will be up to the jury to determine whether the carrier's detachment from the base is best explained by a faulty latching mechanism or a base that is stiffer than the carrier.

Testing of the 390/391 Car Seats

Evenflo additionally argues that testing performed by the NHTSA and Evenflo on the 390/391 model should be excluded because the tests were too different from the actual car accident that led to A.H.'s injuries. When the NHTSA performed side-impact testing, the car seat was placed on the non-struck side of the vehicle, whereas the Jeep was struck on the side

5

where A.H. was riding.  Further, the dummies used in the car seat tests weighed 22 pounds whereas A.H. weighed only 17.6 pounds.  The accident that caused A.H.'s injuries also had a much higher delta-v than the tests, meaning that the actual impact was more severe.

Like similarity of product, similarity of circumstances must also be considered.  *Smith,* 214 F.3d at 1248-49.  "Accidents bearing substantial similarity to the case before the court make the existence of a fact of consequence to the action . . . more or less probable, while dissimilar accidents are less likely to bear on a fact of consequence to the case . . . ."  *Id.* at 1246.  While we here are comparing an accident to a test, rather than an accident to other accidents, I do not find that distinction to be particularly significant.

Once again, one must consider plaintiffs' theory of the case.  Plaintiffs argue that the car seat carrier dislodged from the base because of inertial forces.  Evenflo, in contrast, argues that the carrier was physically pushed from the base.  Under the inertial force theory, the tests that NHTSA performed where the opposite side of the car was hit are relevant, because those tests tend to show that inertial force could remove a 390/391 carrier from its base.

The greater delta-v in the actual accident can reasonably be interpreted differently.  It might suggest that this was such a severe impact that neither this car seat nor perhaps any car seat could have withstood it.  Or, it might suggest that the latching mechanism was so inadequate that it could not withstand even a much less severe impact.  Again, that is the kind of judgment that juries make.  Evenflo also notes that the dummy used in the tests was heavier than A.H.; the striking vehicle in the actual accident was heavier and had a higher bumper than that used in the tests; and the vehicle that was hit in the tests was stationary rather than moving as it was in A.H.'s case.  Relevance does not require identical circumstances, but rather substantially similar circumstances.  The tests were designed to measure the effect of inertial force on a car seat

following a side impact. Similarly, under plaintiffs' theory of the accident, inertial force separated the carrier and base after a side impact. It is unreasonable to think that to be relevant a car seat test must be performed in a manner where every variable is identical. I conclude again that the test is sufficiently similar to be considered by the jury. The various differences go to the weight that the jury will ultimately give the evidence.

**Order**

Motion #134 is DENIED.

DATED this 31st day of October, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge