IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-02435-RBJ-KMT

A.H., a minor, by and through his parents and next of friend,
TONY HADJIH and
TONY HADJIH, individually,

      Plaintiffs,

v.

EVENFLO COMPANY, INC., a Delaware Corporation,

      Defendant.

---

## ORDER

---

At the conclusion of a seven-day trial in this products liability case the jury rendered a verdict in favor of the defendant.  Plaintiffs move for a new trial on grounds that the Court should not have permitted the defendant to introduce the video deposition of its former employee Randy Kiser.[1]  For the reasons set forth herein, the motion is denied.

**Facts**

These facts are established by documents in the record.  On June 10, 2005 Razika Hadjih was involved in a serious motor vehicle accident in Centennial, Colorado.  Her five-year old son A.H. was in the back seat of the family's Jeep, properly restrained in an Evenflo Discovery Infant Car Seat, model number 3162356 (the "Model 316 Discovery").  This is a two-piece device consisting of a base which is affixed to the vehicle and a snap-in seat in which the child is restrained.  During the collision the seat separated from the base, ultimately coming to rest in the

---

[1] Plaintiffs argue as a second ground for a new trial that the Court improperly directed a verdict on their failure to warn claim.  The trial record will speak for itself as to the Court's basis for that decision, and I do not find any cause to expand on the Court's reasoning here.

Jeep's rear or cargo compartment with A.H. still in it.  The child sustained serious and permanent injuries.

The gist of this case was that the separation would not have occurred, and therefore the child would not have sustained devastating injuries, if the latching mechanism holding the seat in the base had been properly designed.  The child's father brought the suit on his own and the child's behalf.  Plaintiffs initially asserted five claims: (1) strict products liability, primarily based on the product's allegedly defective design, ostensibly also on a failure to warn theory; (2) negligence; (3) negligent misrepresentation; (4) breach of warranties; and (5) deceptive trade practices under the Colorado Consumer Protection Act, C.R.S. § 6-1-105(1).  Ultimately it was tried to a jury over the course of nine days between November 5 and November 16, 2012 and given to the jury on the products liability and Colorado Consumer Protection Act claims.  The jury rendered its verdict in favor of the defendant.

Plaintiffs' motion for a new trial focuses on witness Randy Kiser.  Mr. Kiser was Evenflo's Director of Product Safety, Research and Development, located at Evenflo's offices in Miamisburg, Ohio.  In Evenflo's First Amended Rule 26(a)(1) Disclosures, dated September 30, 2011 [docket entry #186-1], Mr. Kiser was described as having "knowledge with respect to the design, development, manufacturing, testing, warnings, instructions, and field performance of the Discovery infant child restraint system."  *Id.* at 4, ¶12.  Further, he was said to have "knowledge regarding government and industry standards, testing performed by NHTSA, investigations by NHTSA, other models of the Discovery, other Evenflo child restraint systems, competitor child restraint systems, quality assurance practices, warnings, instructions, investigation of consumer contacts and reported incidents, and related issues."  *Id.*  In addition, he had "knowledge regarding the subject child seat and Jeep Grand Cherokee, and information in rebuttal to

Plaintiff's contentions, and those of Plaintiff's experts, regarding the design, manufacturing, testing, instructions, warnings and related areas and issues." *Id.* Mr. Kiser was the only Evenflo employee identified as having knowledge in those areas.

Mr. Kiser was also listed in Evenflo's expert witness disclosures, similarly dated September 30, 2011. [#186-2]. That disclosure in its entirety reads as follows:

> Mr. Kiser is an engineer and the Director of Product Safety, Research and Development at Evenflo. Mr. Kiser will testify as a fact witness and may also provide testimony that would be considered expert testimony under Evidence Rules 702, 703 or 705. Mr. Kiser's opinions are based upon his education, training and experience, as well as his involvement in the design, production, testing and analysis of other models of the Discovery and other Evenflo seats, his involvement with Evenflo's analysis of the performance of its child seats, examination of the Model 316 seat involved in the subject collision, and examination of the Jeep Grand Cherokee involved in the collision. Mr. Kiser's *curriculum vitae* is provided herewith. Upon request, Mr. Kiser will be made available for deposition.

> Mr. Kiser is expected to testify that the Model 316 Discovery provides a high level of protection in reasonably foreseeable motor vehicle accidents. The Model 316 has met or exceeded all federal standards. He will testify that the Model 316 has been tested pursuant to Evenflo's internal side-impact test protocol and passed that test. Mr. Kiser is also expected to testify about the safety and user advantages of the two-piece infant child restraint system design.

> Mr. Kiser also may testify consistent with the two affidavits he previously provided in this matter, which have been filed and provided to Plaintiffs. He *may testify* about the differences between the Model 316 and the Models 390 and 391 (and associated "travel systems"), the reasons that led to the recall of the Models 390 and 391, and why those reasons did not apply to the Model 316. However, he will testify about the Models 390 and 391 only if such evidence is deemed admissible by the Court. Additionally, Mr. Kiser is expected to address issues raised by Plaintiffs, their expert witnesses and other evidence presented at trial. Mr. Kiser may amend or alter his opinions after reading depositions and other discovery in the case.

*Id.* at 3-5.

Obviously, Evenflo expected when its counsel filed these disclosures that Mr. Kiser would be a key witness in this case. Mr. Kiser had also testified on behalf of the company in other cases, approximately 10 depositions and two trials during the past five years according to

Evenflo's response to the pending motion.  He was designated as Evenflo's Rule 30(b)(6) witness in this case.

With this background, the following chronology is relevant to the present dispute:

- 4/6/12.  Mr. Kiser's videotaped deposition is taken by plaintiffs' counsel.  Evenflo's counsel asks no questions.

- 7/12/12.  Mr. Kiser leaves Evenflo to take a position at Graco, a subsidiary of Newell Rubbermaid and an Evenflo competitor in the car seat business.  The plaintiffs are not notified.

- 8/31/12.  Evenflo updates its expert disclosures for witnesses Van Arsdell and Banks but does not provide an update for Mr. Kiser.

- 9/17/12.  Evenflo files a motion in limine seeking to preclude evidence concerning Discovery Model 390 and 391 car seats.  [#134].  In a footnote Evenflo states, "Randolph Kiser, Director of Product Safety, Research and Development at Evenflo, was presented for deposition as Evenflo's Rule 30(b)(6) witness."  [#134 at 7, n.7]. In fact, Mr. Kiser was not an Evenflo employee on September 17, 2012, but this was not disclosed at this time.

- 10/12/12.  The parties file a proposed Final Pretrial Order [#147].  Plaintiffs list Mr. Kiser as a non-expert witness likely be called to testify by means of his videotaped deposition.  *Id.* at 13-14; Ex. A [#147-1] at 3; Ex. A-3 [#147-4].  Evenflo lists Mr. Kiser as one of nine witnesses who are "likely to be called to testify in-person at trial."  Ex B [#147-8].  Evenflo also states, "[d]epending on developments at trial and rulings by the Court, Evenflo Company, Inc. may offer some or all" of the same nine listed witnesses.  Evenflo does not identify any witness to be offered by deposition.

4

- 10/15/12.  Evenflo files a reply to plaintiffs' response regarding Evenflo's motion in limine concerning the Discovery Model 390 and 391 car seats.  Attached as an exhibit to this reply is an affidavit of Mr. Kiser dated October 11, 2012.  [#150-1].  In this affidavit Mr. Kiser states that he was the Director of Product Safety for Evenflo at all pertinent times, but that he presently is employed by Newell Rubbermaid.  *Id.* ¶1.[2]

- 11/5/12.  The trial begins, and counsel for both parties make their opening statements to the jury.  In the pending motion plaintiffs state, "Evenflo lawyer John Fitzpatrick told the jury in opening that Kiser would be there to tell them why he and Evenflo were so proud of the Discovery."  [#186 at 6].  I have read the transcript and do not find such a statement.  The closest comments are the following:

  > So what had happened is when they made it (referring to the Model 390/391 Discovery, a modified version of the Model 316) heavier and longer, we created a stiffness difference between the carrier and the base. Has nothing to do with the latch mechanisms.  *Our engineers will tell you.* Transcript [#189] at 85 (transcript p. 210).

  > Once we notify, *you'll hear from our in-house people*, you're able to start duplicating, we found quickly the root cause was the difference in stiffness between the base and the carrier, not the latch.  *Id.* (emphasis added)

- 11/5/12.  At some point on that same first day of trial plaintiffs' counsel informs the Court that, although plaintiffs had previously planned to offer parts of Mr. Kiser's deposition testimony, they were not going to do that because Mr. Kiser was coming to testify live.[3]

---

[2] Contrary to a statement in Evenflo's response to the pending motion, it was this affidavit, not the affidavit filed on September 17, 2012 as docket entry #134-4, that first indicated that Mr. Kiser was no longer with the company.

[3] This was mentioned a couple of times later.  *See, e.g.,* Transcript of the sixth day of trial [#195] at 93-94 (transcript pp. 1224-25) and at 127 (transcript p. 1256).  It must not have been on the record on the first day of trial, as I could find nothing about it in the transcript for that day.  However, Evenflo has not disputed it.  This information was apparently provided to the Court on that first day so that the Court need not go through the designated deposition excerpts and rule on objections.

- 11/9/12.  A Friday, during or after the fifth day of trial.  Evenflo's counsel advises plaintiffs' counsel that Evenflo was considering presenting Mr. Kiser via his deposition testimony only.  Plaintiffs voice no objection to the use of the deposition at that time.  [#187 at 5-6].

- 11/10/12.  Saturday.  Evenflo states in its response to the pending motion that it conclusively determined on this date not to present Mr. Kiser's testimony live and sent deposition designations to plaintiffs' counsel.  [#187 at 6].  An email exchange between counsel confirms that Evenflo told the plaintiffs that it had decided to call Mr. Kiser by video, and that counsel would include all excerpts designated by plaintiffs and provide Evenflo's counter designations within the next several hours. [#186-4].

- 11/10--11/12/12.  Saturday through Monday (which was a court holiday for Veterans' Day).  Evenflo states that the parties negotiated deposition designations throughout the long weekend, and that plaintiffs did not raise any objection to the deposition during this process.  Plaintiffs have not disputed this.

- 11/13/12.  Tuesday.  At the beginning of the day, now the sixth trial day, plaintiffs' counsel notify the Court that they wish to object pursuant to Fed. R. Civ. P. 32 to the playing of a video deposition scheduled for that afternoon but indicate that further discussion of the objection can wait until later.  When the Court indicates that it will not be able to go over many disputes concerning designations of testimony by that afternoon, plaintiffs' counsel explains that the dispute is not a line-by-line objection but an objection to the playing the deposition at all.  Transcript [#195] at 24 (transcript pp. 1133-35).

- 11/13/12.  At the beginning of the afternoon session plaintiff's counsel informs the Court that on Saturday Evenflo had notified plaintiffs for the first time that they were not going to bring Mr. Kiser in, and that instead that they wanted to read the deposition.  Plaintiffs argue that Mr. Kiser is not unavailable within the meaning of Rule 32.  The jury returns, and further discussion did not occur until later in the day. *Id.* at 93-94 (transcript pp. 1224-25).

- 11/13/12.  The subject comes up again later that day after the plaintiffs have rested their case.  The Court asks Evenflo's counsel, "with respect to the deposition, what's the story?"  *Id.* at 125 (transcript p. 1254).  Mr. Fitzpatrick responds that Mr. Kiser no longer works for Evenflo and now lives in Atlanta, but that he was "deposed fully." He adds: "No secret.  He filed it in his affidavit a month ago."  *Id.*  Mr. Fitzpatrick advises the Court that plaintiffs designated portions of the Kiser deposition, and that Evenflo made counter-designations.  He further states that he told plaintiffs' counsel on Friday that he might use the deposition because he needed time to get his other witnesses in, and on Saturday he told plaintiffs' counsel that Evenflo would play "your designations of my 30(b)(6) witness."  *Id.* at 126 (transcript p. 1257).  He informs the Court that plaintiffs did not complain on Saturday, Sunday or Monday, and that the parties were exchanging deposition designations.

The following dialogue then occurred:

> THE COURT:  Let me ask you two questions.  I want an honest, candid answer. One, can you get him here; is this tactical.
>
> MR. FITZPATRICK:  It is not tactical, Your Honor.  I'm trying to get my case done by Thursday, so I can close by Friday.  He doesn't work for us, we asked him could he put one day aside, can we do it Tuesday.  He doesn't work for me.
>
> THE COURT:  Can you get him here.

MR. FITZPATRICK:  I can ask him if I can get him here Thursday or Friday.  I don't control him.  I can tell you tomorrow, but I have the video ready to go.

THE COURT:  All right.  And you say – you said you're within one issue of having this resolved on the deposition.

MR. GENTILE (plaintiffs' counsel):  Yes, Your Honor.  To be perfectly frank, … we had designated these deposition designations for Mr. Kiser a month or so ago, whenever the pretrial required us to do that.  At that time they countered with some.  And then we've gone back and forth several times, it's true.  On Friday Mr. Fitzpatrick told us that he wasn't sure if Kiser was going to be here or not.  You know from my conversations with you that I withdraw (sic) our designations last week.

THE COURT:  Yes, yes, I know that.

MR. GENTILE:  So, we were going to call him, and he repeatedly – and Mr. Douthit can address this – repeatedly told us last week, back and forth, he wasn't sure if Mr. Kiser was coming, he didn't know.  On Saturday he confirmed it for sure, and then he took our deposition, the discovery deposition, that we took of him as an expert and as a 30(b)(6) witness, but it's a discovery witness, they turned round then and said, we're not going to call the guy, we're going to read all your discovery questions.

And to be honest with you, I did not – to respond to the question about why this wasn't brought up, because I didn't think about Rule 32 until this morning, but Rule 32 governs this issue and it deals with an unavailable witness, and it says a party may use for any purpose the deposition of a witness whether or not a party, if the court finds that the witness is dead, if the witness cannot attend because of age, illness, infirmity or imprisonment, that the party offering the deposition could not procure the witness's attendance by subpoena, that the witness is more than a hundred miles away, and that his absence was procured by the party offering the deposition.

And the last one, which is the one that's really triggered here is subsection E, which says that on motion and notice that exceptional circumstances make it desirable with the interests of justice and live testimony in open court to permit the deposition to be used.

So I read that this morning and I approached Mr. Fitzpatrick about it and I said I'm going to object on Rule 32.  There was (sic) no exceptional circumstances.  The Tenth Circuit takes a very rigorous view of this.  I've got a couple cases I can give the Court the citations to.

THE COURT:  Well, he's more than a hundred miles away, yes.

MR. GENTILE:  He is, but, yes, sir, he can be procured.  As of Friday, as of Saturday –

THE COURT:  They can't force him to come.

MR. GENTILE:  No, they can't force him to come, but as of Saturday, he was willing to come; and it was Mr. Fitzpatrick's tactical, strategic decision, because

Mr. Kiser, we have a long history with Mr. Kiser, we've cross-examined him many times in trial.  He says a lot of things, and he said a lot of things in his deposition that we very much think the jury should be entitled to judge his demeanor and credibility on.

THE COURT:  Is it a video deposition?

MR. GENTILE:  Yes, sir, but it's a discovery deposition.

THE COURT:  I'm not aware of any law that says a discovery deposition is different from any other deposition for this purpose.

MR. GENTILE:  That's true.  It's not.  But in this case, this is a, this is a key Evenflo witness on [a] key issue for the jury to decide.  We have a fundamental right to cross-examine this witness in front of the jury, not, not have our discovery questions played to him, but to cross-examine him in front of this jury; and Rule 32 says that there have to be exceptional circumstances for them to get to play the deposition.  And there are no exceptional circumstances.

THE COURT:  Well, that's one of the reasons, but I note he's more than a hundred miles away and he's not working for the company.

MR. FITZPATRICK:  Yes.

MR. GENTILE:  Yes, sir. What it says is the witness is more than a hundred miles from the place of hearing or trial and is outside the United States unless it appears that the witness's absence was procured by the party offering the deposition.

I'm not suggesting that Mr. Kiser left 25 years at Evenflo and moved to Graco to subvert this particular trial.  But my point is they, as of Saturday, said they could get him here.

THE COURT:  What's his phone number?

MR. GENTILE:  I don't know his phone number.

THE COURT (to Mr. Fitzpatrick):  What's his phone number?

MR. FITZPATRICK:  I have it back in the office, Judge.  I don't have it with me.  Judge, he doesn't live here.  He's a hundred miles outside –

THE COURT:  It's never been disclosed?

MR. GENTILE:  He was disclosed as an expert.

THE COURT:  His phone number was never disclosed?

MR. DOUTHIT:  Ask the general counsel.  He knows Randy for 20 years.

MR. FITZPATRICK:  Your Honor, he gave his affidavit a month ago that we filed.  No shell game, which they accused me of this morning.  He was already – he said he doesn't work for the company.  He's more than a hundred miles away, he's unavailable.  I want to get my trial in.  I'm using their transcript.

THE COURT:  You don't mind if I ask him if he's available, do you?  That's why I'm asking for his phone number.  I'd like to call him right now and ask him.  Miss Jones (another Evenflo lawyer) would you give it to me, please.

MS. JONES:  I have to look it up.

THE COURT:  Thank you.

MR. DOUTHIT:  Bill (Evenflo's general counsel), do you have it?

MR. GROSS:  I do not.  I really don't.

MR. FITZPATRICK:  And, Judge, I have other experts lined up for the next couple days.

THE COURT:  Yes, but it's going to take time, whether it's a deposition or whether it's him in person.

MR. FITZPATRICK:  No, sir.  I have my other experts lined up.  I have two tomorrow morning, I have Van Arsdell in the afternoon Thursday.

THE COURT:  Who do you have this afternoon?

MR. FITZPATRICK:  I have Mr. Guenther, and then he was supposed to be an hour, and I have a two-hour video.  I would get all my experts in on time.

THE COURT:  Relax.  Now, I'm going to ask one more time for the phone number –

MR. FITZPATRICK:  Your Honor, 770.  I hope this is right – (770) 418-7086.

THE COURT (to the courtroom deputy):  Would you call him.

I think Mr. Fitzpatrick is right, by the way, technically, but I have a concern about fundamental fairness.

TELEPHONE RECORDING:  Please consult your directory and call again, or ask the operator for assistance, this is a recording.

MR. GENTILE:  Just for the record, Your Honor, I would like to note, in addition to our belief that this deposition is improper under Rule 32 that to allow it under the circumstances of this case would be unfairly prejudicial, particularly since Mr. Fitzpatrick told us last week when our expert was here that he had no intention of getting into some of the topics that are in the deposition, and we let him go for that reason.  There are several reasons why it's unfairly prejudicial –

THE COURT:  If you guys keep talking, you'll talk yourself out of the position you're in right now.

MR. GENTILE:  Sorry.

THE COURT: Sometimes people leave well enough alone.

No answer?

COURTROOM DEPUTY:  Your Honor, it's a correct phone number, but I just got a voice mail.

10

THE COURT. All right. Call back and leave a voice message to call, your number.

COURTROOM DEPUTY: Yes, Your Honor.

THE COURT: Please.

Transcript [#195] at 126-33 (transcript pages 1257-64).

- 11/13/12. Still on the afternoon of that same day the testimony of Evenflo's retained expert witness Dennis Guenther was concluded. Mr. Fitzpatrick advises the Court that other than the Kiser video deposition, Evenflo is done for the day. *Id.* at 195 (transcript p. 1326). The Court indicates that he can start the video, but that it "doesn't resolve the issue we're talking about." *Id.* Mr. Fitzpatrick responds, "Yes, sir." When the jury returns, counsel calls Evenflo's next witness, Mr. Kiser "who is the corporate witness designated for Evenflo in this case," by deposition. *Id.* A portion of the video deposition is played.

- 11/13/12. After the jury is excused for the day, the Court asks plaintiffs' counsel whether he still wants Mr. Kiser live. He responded that he does, at which point the Court tells Mr. Fitzpatrick, "I want you to make your best efforts to get him." Mr. Fitzpatrick responds, "I will." *Id.* at 196 (transcript p. 1327).

However, that is not the final word on the Kiser matter that afternoon. Plaintiffs' counsel indicate that counsel had agreed that a 2004 National Highway Transportation and Safety Act ("NHTSA") investigation would not be referenced by either side, and based on that agreement, plaintiffs had not asked their expert, Mr. Whitman, about that subject when he testified. However, he says, the Kiser deposition did address the investigation. Counsel states that when he brought that up with defense counsel, Mr. Fitzpatrick told him to just call Mr. Whitman back. But, plaintiffs indicate, because of the expense of doing that, and the Thanksgiving holiday

coming in the next week, that is impractical.  Therefore, he argues, the plaintiffs are "severely prejudiced." *Id.* at 199 (transcript p. 1330).

Mr. Fitzpatrick thereupon denies that there was such an agreement, adding, "I am putting on the record my reputation."  He states that the NHTSA investigation only became relevant when the Court permitted the introduction of certain "OSI" field reports, i.e., reports of other incidents and complaints about Evenflo car seats.  His agreement, he claims, was not to go into the investigation unless plaintiffs were able to get the OSI's into evidence.  *Id.* at 200-02 (transcript pp. 1331-33).

Plaintiffs' counsel responds, "as an officer of the court," that there was an agreement as he had described it.  The Court comments, "Look, I can't tell which one of you guys is telling me the truth.  How can I?  Can you contact Mr. Whitman and see if he's available to respond to this by phone?  It sounds like relevant evidence to me." *Id.* at 203 (transcript p. 1334).

- 11/14/12.  When the Court asks Mr. Fitzpatrick the following morning, "What's the story with Mr. Kiser, the following dialogue then takes place:

> MR. FITZPATRIC:  Your Honor, we contacted him last night.  I know he tried to call this morning.
>
> THE COURT:  Yes, he got through to Laura.
>
> MR. FITZPATRICK:  I think you understand that he cannot make it out here.  We asked him to make it out.  If he can come out Friday.  He's working with a competitor now.  He said he potentially got to go out of the country Friday or Saturday.  He can't come, and we asked him.
>
> THE COURT:  All right.  I'll take your word for it.
>
> So, what's your position, then? (addressed to plaintiffs' counsel)
>
> MR. DOUTHIT:  I spoke with Mr. Whitman last night.  He's down in Alabama gearing up for another trial.  He's not available to come back.  And talked it over with co-counsel.  We do not believe it would be effective to try to ask him questions over the phone.  So –

> THE COURT: Well, let's talk about Kiser first and then we'll talk about that. Or do you think they're related?
>
> MR. DOUTHIT: Well, the Kiser issue, with regard to the 2004 investigation. Is, you know, the big concern that I was talking about, not the whole deposition, but just that portion.

[#196 at 2-3] (transcript pp. 1335-36).

After a discussion of the relevance of the NHTHA investigation, the Court permits Evenflo to resume and conclude the playing of the designated portions of the Kiser deposition, explaining to the jury that "[t]he reason he isn't here is because he couldn't get here, and that's why we're using the testimony this way." [#196 at 13](transcript p. 1350).

**Further Findings of Fact**

The Court makes the following additional findings of fact based on the facts of record, inferences from those record facts, and credibility assessments.

First, the Court finds that, notwithstanding Mr. Kiser's change of employment from Evenflo to an Evenflo competitor, Mr. Kiser remained willing to cooperate with Evenflo and its counsel in the present case. There is no evidence in the record that he left the company on other than amicable terms, or that his new employer discouraged him from continuing to be available to assist in this case. He provided an affidavit in support of an Evenflo reply brief approximately three months after his change of employment. At approximately the same time Evenflo listed him as a witness likely to be called in person to testify at trial. With the possible exception of whether he was available to fly to Denver on one or two days' notice towards the end of the second week of trial after apparently being told by Evenflo representatives that he wouldn't be needed, I am satisfied that Evenflo could have called him as a live witness had it wished to. In fact, given everything I now know, and putting that into the equation with the exposure Evenflo faced and Mr. Kiser's role before he left the company, I frankly do not believe that Mr. Kiser

would have refused to change his plans and travel to Denver, even at the "last minute," had Evenflo informed him that the company truly needed his live testimony.

Second, the Court finds that the scenario as it played out from Mr. Kiser's departure to the conclusion of the trial was substantially driven by strategic and tactical considerations. Evenflo plainly did not go out of its way to inform the plaintiffs of Mr. Kiser's departure. Evenflo's motion in limine filed September 17, 2012 [#134], two months after Mr. Kiser was gone, identified Mr. Kiser as Evenflo's Director of Product Safety, Research and Development. The fact that he worked for another company was not revealed until a single sentence that was included in the October 11, 2012 affidavit filed as an exhibit to a reply brief on the motion in limine.  The wording of Evenflo's witness list filed on October 12, 2012 indicated that all nine witnesses, one of whom was Mr. Kiser, were "likely" to be called in person but added that Evenflo would reevaluate this depending on developments in the trial and court rulings.  Evenflo gave off no other indication that it was seriously thinking of not calling Mr. Kiser until sometime during the first week of trial, probably not before Friday, although one of plaintiffs' counsel's remarks seemed to indicate that it might have been discussed earlier.  Evenflo states that counsel "conclusively" decided not to call Mr. Kiser as a live witness on Saturday.  Perhaps, but the strategizing that culminated in that decision did not occur overnight.

There is nothing inherently bad or unusual about employing strategy or tactics in a legal case.  On the contrary, lawyers have a duty to exercise judgment and to employ strategies and tactics that promote their clients' interests, so long they do not unfairly prejudice the opposing party and are done within the requirements of professional responsibility.  In that regard I need to note my disappointment with the response of Evenflo's lead counsel to the Court's direct question as to whether the decision not to call Mr. Kiser as a witness was "tactical."  He denied

it.  But, as is now abundantly clear, it certainly was tactical.  Evenflo has subsequently

acknowledged that "strategy decisions" were a factor in the decision.  Response [#187] at 5.

Perhaps the answer to the Court's question, given quickly and in the heat of battle, was a

momentary lapse in good judgment.  However, it was not the degree of forthrightness and candor

that this Court expects.

Third, the deposition that is at the center of the present controversy was not what I would

consider to be a typical "discovery deposition."  Plaintiffs' counsel had considerable prior

experience with Mr. Kiser through other cases in which they were involved.  Because of that

experience, fortified by Mr. Kiser's 17-page affidavit filed on June 17, 2010 [#49-7] and

Evenflo's description of Mr. Kiser's potential lay and expert testimony in its September 30, 2011

disclosures [## 186-1 and 186-2], plaintiffs' counsel had considerable knowledge of Mr. Kiser

and his opinions going into the deposition.  They had a very good head start in terms of what

they chose to inquire about.  They arranged for the deposition to be videotaped, which

presumably is done in anticipation that at least some portion of the deposition might be used

during trial.  And, plaintiffs initially chose to use the deposition as evidence themselves.  They

listed Mr. Kiser as a plaintiffs' witness by deposition and prepared designations of the portions

of the deposition that they wished to use.

Fourth, when plaintiffs' counsel were informed of Evenflo's decision not to call Mr.

Kiser as a live witness, their initial reaction was not to object but instead to set about the task of

exchanging or re-exchanging with Evenflo's counsel designations of portions of the deposition

that they wished to have presented.  They did not express any objection until Tuesday, the start

of the second trial week.  I infer that there was some strategizing occurring on their side as well.

At a minimum the delay in deciding to object to the use of the deposition contributed to the alleged practical difficulty of bringing Mr. Kiser to Denver on short notice.

Fifth, when it came down to decision time on the use of the deposition, the Court was not provided with any disputes or requested to make any rulings on the particular portions of the deposition that were presented.  Apparently the portions included all of the portions that the plaintiffs had designated plus additional portions that Evenflo designated.  In any event, at one point plaintiffs' counsel advised the Court that the issue was not objections to particular questions and answers but instead whether any portion could be used.  At another point plaintiffs' counsel seemed to indicate that it was only the part of the Kiser deposition that dealt with the NHTSA investigation to which they objected, because they had not thought they needed to ask their own expert Mr. Whitman to testify about that investigation when he was here.  Evenflo argues that plaintiffs have never objected to the content or substance of the deposition.  Response [#187] at 21.  With the exception of the lawyers' dispute about whether they had agreed to stay away from evidence concerning an NHSTA investigation, Evenflo's argument on that point appears to be correct.

### Conclusions

The pending motion asks this Court to determine whether, in view of all of the information now known, the decision to permit Evenflo to use the deposition during the trial was erroneous.  If so, was the error of sufficient magnitude in terms of prejudice to the plaintiffs that a new trial should be ordered?  I turn to those difficult questions next.

The use of a deposition at trial is governed by Rule 32 of the Federal Rules of Civil Procedure.  Although deposition testimony might otherwise be inadmissible under the hearsay rules, Rule 32(a)(4) amounts to an exception to those rules.  *Garcia-Martinez v. City and County*

16

*of Denver,* 392 F.3d 1187, 1191 (10th Cir. 2004).  In pertinent part, Rule 32(a)(4) provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition.[4]

It is undisputed that Mr. Kiser was more than 100 miles from this courthouse.  He lives and works in Georgia, and there has been no suggestion that he was within 100 miles of Denver during the second week of this trial.  His absence was not procured by Evenflo.  He moved to Georgia when he took a job there after leaving Evenflo (which is headquartered in Ohio) in July 2012.

Could Evenflo have procured his presence to testify in person during the trial?  I have no doubt that it could have done so if it had made the arrangement before trial or even during the first several days of the trial.  After contacting Mr. Kiser on the evening of the first day (Tuesday) of the second week at the Court's request, counsel reported back that Mr. Kiser had a possible conflict with a possible out of country trip on Friday or Saturday, and then stated, "he can't come, and we asked him."  At that time I took counsel's word for it.  But even assuming that Evenflo in fact could have procured his presence, there is a difference between procuring an otherwise available witness' absence to avoid his appearance and electing not to procure the attendance of a witness who is not within the 100-mile radius.  *See, e.g., Carey v. Bahama Cruise Lines,* 864 F.2d 201, 204 (1st Cir. 1988); and *Nash v. Heckler,* 108 F.R.D. 376, 378 (W.D.

---

[4] Plaintiffs have also mentioned the exception in section 32(a)(4)(E), which permits the use of a deposition "on motion and notice, that exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony in open court – to permit the deposition to be used."  However, because the Court concludes that the exception provided by subsection (A) applies and permits the deposition to have been used, subsection (E) is essentially moot.

N.Y. 1985), both cases quoting *Houser v. Snap-On Tools Corp.,* 202 F.Supp. 181, 189 (D. Md.

1962)("procuring absence and doing nothing to facilitate presence are quite different things").

 I agree with the plaintiffs that the facts that Mr. Kiser was more than 100 miles away and

that Evenflo did not "procure" his absence do not necessarily compel the conclusion that the

deposition testimony must be admitted. *See Polys v. Trans-Colorado Airlines, Inc.,* 941 F.2d

1404, 1410 (10th Cir. 1991). Trial courts have a certain amount of discretion when it comes to

the admission or exclusion of testimony. They may appropriately consider factors such as

surprise and prejudice to the opposing party. *Id. See also In re Air Crash Disaster at Stapleton

International Airport,* 720 F. Supp. 1493, 1502 (D. Colo. 1989). By the same token, the fact that

this Court preferred that Evenflo bring Mr. Kiser to Denver once the dispute broke out does not

mean that the deposition had to be excluded. The Court has to consider the totality of the

circumstances.

 Here, the totality of the circumstances includes the way in which the scenario was

orchestrated by Evenflo, which leaves a bad taste in my mouth. Evenflo wasn't forthright about

Mr. Kiser's change of employment. Later, Evenflo's counsel wasn't forthright in at least one

respect with this Court. The continuum of Evenflo's conduct maintained in the minds of

plaintiffs' lawyers the anticipation that Mr. Kiser would testify at trial. While I cannot be sure

without hearing directly from Mr. Kiser, my sense based on what I have seen is that Evenflo was

at least considering the use of the deposition instead of live testimony all along. To me, this is

gamesmanship. I don't like it, but I have said what I have to say on the subject.

 The totality of the circumstances doesn't end, however, with Evenflo's conduct. I must

also take into consideration that the plaintiffs took the deposition; they asked the questions they

wished to ask; they listed Mr. Kiser, by his deposition, as a plaintiffs' witness in the pretrial

order; although they indicated at the beginning of the trial that they had decided to go with live cross-examination of Mr. Kiser in lieu of his deposition testimony, when they learned that Evenflo was not going to bring Mr. Kiser in, they did not immediately object, nor did they object to the use of the deposition; instead, during that interval between Saturday and Tuesday they were exchanging deposition designations with Evenflo's counsel; they ultimately changed their position on the deposition, but they for the most part did not object to its content or substance; as for the issue concerning the NHTSA investigation, they were offered the opportunity to bring their expert back, by telephone if necessary, to respond to points in the Kiser deposition that plaintiffs' expert had not addressed in his original testimony, but they elected not to do that.

I am not faulting plaintiffs' counsel for any of this.  They had to exercise their best judgment as to what best served their clients, and that judgment could certainly change from time to time.  But there is more to the question of whether the deposition should have been allowed than the frustrations resulting from the tactical moves of Evenflo's counsel.

I will add a few words on "discovery depositions."  There is no such thing in the rules. There is such a thing in the real world of modern litigation.  While there can be many reasons to take deposition, probably foremost among them is to discover what the witness has to say.  The examining lawyer might ask broad, open-ended questions, and wade incautiously into uncharted waters, not expecting that the deposition will be used by opposing counsel at trial.  But under the rules currently in place, a deposition is a deposition; and whether testimony taken for the purpose of discovery is admissible at trial ultimately turns on the application of those rules.  As discussed above, trial courts still have some inherent jurisdiction to exclude evidence when the ends of justice demand it.  But here, where plaintiffs' counsel's already knew much of what Mr. Kiser

would say, nevertheless (and quite properly) took his deposition, and initially decided to use it themselves, their later decision to object to its use has less force.

Finally, I address the alternative argument made in the pending motion that Mr. Kiser's deposition should not have been permitted because it included expert opinions for which he had provided no written report. Rule 26(a)(2)(b) requires a written report, prepared and signed by the witness, if the witness is retained or specially employed to provide expert testimony in the case or if the witness' duties as the employee of a party regularly involve giving expert testimony. If the expert does not fall within those categories, then he is not required to provide a written report, but the party's expert disclosure must state the subject matter and a summary of the facts and opinions to which the witness is expected to testify. Mr. Kiser was not retained or specially employed to provide expert testimony in this case. His opinions were developed, disclosed and subjected to deposition examination while he was an Evenflo employee. Plaintiffs suggest that he could be considered to be a witness whose duties regularly involved giving expert testimony, in which case a written report would be required. They also suggest that once he left Evenflo he became a retained expert, and a written report was required. But even if those arguments were otherwise persuasive, the simple fact is that plaintiffs did not object to the lack of a report. They did not complain that the summary of his opinions that was provided was insufficient under the rules. These arguments come too late in a motion for a new trial.

The bottom line is, based on my reexamination of the record including the trial transcript, I do not conclude that permitting the deposition to be played was erroneous. More basically, I do not conclude that the use of this deposition deprived the plaintiffs of a fair trial.

**Order**

For the foregoing reasons, plaintiffs' motion for a new trial [#186] is denied.

DATED this 30th day of August, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge